UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ADELE FORGIONE, Individually and as Parent and
Natural Guardian of L.V., an Infant,

                Plaintiff,          1:12-CV-0869
                                                          (GTS/CFH)
v.

NICKELS AND DIMES, INC., d/b/a Tilt 82,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

HACKER MURPHY, LLP                     JOHN F. HARWICK, ESQ.
  Counsel for Plaintiff
7 Airport Park Boulevard
Latham, NY 12110-0104

AHMUTY DEMERS & McMANUS           PATRICK J. PICKETT, ESQ.
  Counsel for Defendant
1531 Route 82
Hopewell Junction, NY 12533

GLENN T. SUDDABY, United States District Judge

## **<u>DECISION and ORDER</u>**

       Currently before the Court, in this personal injury action filed by Adele Forgione

("Plaintiff") on behalf of her infant daughter, L.V., against Nickels and Dimes Incorporated

("Defendant"), is Defendant's motion for summary judgment. (Dkt. No. 13.) For the reasons set

forth below, Defendant's motion is granted, and Plaintiff's Complaint is dismissed.

I.  **RELEVANT BACKGROUND**

   A.  **Plaintiff's Complaint**

Generally, in her Complaint, Plaintiff alleges that, as her infant daughter ("L.V.") was standing in front of a counter ("the Counter") within a premises owned and operated by Defendant ("the Arcade"), laminate protruding from the Counter lacerated L.V.'s leg ("the Accident"), causing, *inter alia*, severe personal injury, loss of enjoyment of life, and medical expenses. (Dkt. No. 1, at ¶¶ 12-17 [Plf.'s Compl.].) Based on these factual allegations, Plaintiff's Complaint asserts a claim of negligence. (*Id.* at ¶¶ 18-24.) As relief, Plaintiff's Complaint seeks damages on behalf of L.V. in the amount of $300,000, as well as damages in Plaintiff's own individual capacity in the amount of $50,000. (*Id.* at ¶¶ 22-28.) Familiarity with this claim and the factual allegations supporting it in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

   B.  **Parties' Briefing on Defendant's Motion for Summary Judgment**

Generally, in support of its motion for summary judgment, Defendant asserts the following two arguments: (1) as a matter of law, Defendant cannot be liable for negligence because insufficient admissible record evidence exists from which a rational fact finder could conclude that Defendant had actual or constructive notice of any defect in the Counter before the Accident; and (2) as a matter of law, Defendant cannot be liable for negligence because insufficient admissible record evidence exists from which a rational fact finder could conclude Defendant created the condition that caused the Accident. (Dkt. No. 13, Attach. 3, at 9-15 [Def.'s Memo. of Law].)

Generally, in opposition to Defendant's motion, Plaintiff asserts the following three arguments: (1) Defendant can be liable for negligence because a rational fact finder could conclude that Defendant had constructive notice of a defect in the Counter through its regular but inadequate inspections of the Counter; (2) Defendant can be liable for negligence because a rational fact finder could conclude that Defendant created the condition which caused the Accident through Defendant's repeated use of a cleaning agent to clean the Counter; and (3) in any event, the doctrine of *res ipsa loquitor* is available to Plaintiff, permitting the fact finder to draw an inference of negligence. (Dkt. No. 18, at 3-9 [Plf.'s Opp'n Memo. of Law].)

Generally, in its reply to Plaintiff's opposition, Defendant asserts the following two arguments: (1) Plaintiff's argument that Defendant actually caused the Accident by using a cleaning agent to clean the Counter is not supported by admissible record evidence; and (2) the doctrine of *res ipsa loquitir* does not apply because (a) the Counter was not within the exclusive control of Defendant, and (b) in any event, the evidence shows that it is equally likely that the Accident was caused when L.V. placed her flip-flop shoe on a lip or ledge on the front of the Counter. (*See generally* Dkt. No. 20, Attach. 1, at 3-8 [Def.'s Reply Memo. of Law].)

### C. Undisputed Material Facts

Unless otherwise supported by citations to the record, the following material facts have been asserted and supported by Defendant in its Local Rule 7.1 Statement of Undisputed Material Facts, and either admitted or denied without a supporting record citation by Plaintiff in her Local Rule 7.1 Response. (*Compare* Dkt. No. 13, Attach. 2 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 18, Attach. 1 [Plf.'s Rule 7.1 Response].)

On July 25, 2011, and for approximately twenty-five years before that date, Defendant operated the Tilt arcade in the Aviation Mall in Queensbury, New York. On that day, the manager of the Arcade, Sandra (Monroe) Cuthrell, reported for work. Also on that day, Plaintiff and her husband, Mark Vacca, as well as their infant daughter, L.V. (all of whom were residents of Canada and were on vacation in the Lake George area), visited the Arcade. L.V. was wearing flip-flop shoes. (Dkt. No. 13, Attach. 6, at 29 [Vacca Depo.]; Dkt. No. 13, Attach. 10, at 1 [Accident Report]; *cf.* Dkt. No. 13, Attach. 7, at 18 [Forgione Depo., not denying that L.V. was wearing flip-flop shoes].) At the time of L.V.'s visit to Tilt, there were other customers in the store. (Dkt. No. 13, Attach. 9, at 10, 51 [Cuthrell Depo.]; Dkt. No. 13, Attach. 7, at 8-9 [Forgione Depo.] *cf.* Dkt. No. 13, Attach. 6, at 12 [Vacca Depo., testifying that "it wasn't that busy"].)

At approximately 1:15 p.m., L.V. and her father visited the Arcade's redemption counter ("the Counter") to exchange their tickets for prizes. L.V.'s father saw nothing "out of the ordinary with the front of the counter." (Dkt. No. 13, Attach. 6, at 18 [Vacca Depo.].) L.V. placed her flip-flop shoe on a lip or ledge on the front of the Counter. (Dkt. No. 13, Attach. 9, at 21-22, 35 [Cuthrell Depo.]; Dkt. No. 13, Attach. 10, at 1 [Computer Injury Report]; Dkt. No. 13, Attach. 12 [Customer Injury Report]; *cf.* Dkt. No. 13, Attach. 6, at 29 [Vacca Depo., not denying the fact]; Dkt. No. 13, Attach. 8, at 38 [Jordan Depo., testifying that he has witnessed children climb onto the lips of similar counters in Defendant's other locations].) L.V.'s leg came into contact with a piece of laminate that was attached to, but had become partially dislodged from, the front of the Counter. The piece of laminate lacerated L.V.'s leg.

Before the Accident on July 25, 2011, Defendant required its employees to perform daily and monthly inspections the premises, including the front of the Counter, where L.V. was injured. (*Cf.* Dkt. No. 18, Attach. 1, at ¶ 9 [Plf.'s Rule 7.1 Response, expressly admitting the fact and merely "contend[ing] there is an issue of fact as to the adequacy of those inspections" without a supporting "*specific* citation to the record," as required by Local Rule 7.1(a)(3) (emphasis added)].) The monthly and daily inspections that Defendant's employees performed before and on the day that L.V. suffered her laceration failed to reveal any deficiencies or problems concerning the safety of the Counter or the laminate attached to the front of the Counter. *Cf.* Dkt. No. 18, Attach. 1, at ¶ 10 [Plf.'s Rule 7.1 Response, expressly admitting the fact and merely "contend[ing] there is an issue of fact as to the adequacy of those inspections" without a supporting "*specific* citation to the record," as required by Local Rule 7.1(a)(3) (emphasis added)].)

Specifically, the night before July 25, 2011, Manager Sandra Cuthrell visually inspected the laminate for anything wrong. (Dkt. No. 13, Attach. 9, at 12 [Cuthrell Depo.].) In addition, on the morning of July 25, 2011, Ms. Cuthrell inspected the front of the Counter. (Dkt. No. 13, Attach. 9, at 44-45, 47, 56 [Cuthrell Depo.].) She found nothing wrong with the laminate in front of the Counter before the Accident. (Dkt. No. 13, Attach. 9, at 47-48 [Cuthrell Depo.].)

Furthermore, before the Accident, Defendant never received a complaint at any of the arcades that Defendant owned, including Tilt in the Aviation Mall, concerning loose laminate or of an injury sustained as a result of laminate becoming dislodged from a redemption counter. Moreover, Defendant had not previously performed construction work or repairs on the front of the Counter's laminate at any before the Accident, other than using Windex to clean the laminate on a daily basis. (Dkt. No. 13, Attach. 9, at 53-57 [Cuthrell Depo.].)

After L.V. sustained her injury, Ms. Cuthrell removed all of the laminate from the front of the Counter in order to prevent further injury to Tilt patrons. When she did so, she had to "tug," "pull" and "break off" the remaining laminate from the front of the Counter. (Dkt. No. 13, Attach. 9, at 48-50 [Cuthrell Depo.].)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing Motion for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing a motion for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Lenigan v. Syracuse Hancock Int'l Airport*, 10-CV-1420, 2013 WL 149461, at *4-5 (N.D.N.Y. Jan. 14, 2013) (Suddaby, J.), which accurately recites that legal standard.

### B. Legal Standard Governing Plaintiff's Claims

To establish a claim of negligence under New York law, a plaintiff must show the following: (1) that defendant owed her a duty of care; (2) that defendant breached that duty; and (3) that plaintiff was injured as a result of that breach. *Clark v. Cumberland Farms, Inc.*, 12-CV-1508, 2014 WL 2778947, at *4 (N.D.N.Y June 19, 2014); *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985).

A defendant store owner has a duty to maintain his or her premises in a reasonably safe condition. *See Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976) ("A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.").

To demonstrate that a defendant store owner breached its duty, a plaintiff must show either of the following: (1) that the defendant created the allegedly dangerous condition which caused the plaintiff's injury; or (2) that the defendant had actual or constructive knowledge of the allegedly dangerous condition which caused the injury. *Piazza v. Eckerd Corp.*, 02-CV-0043, 2003 WL 23350118, at *2 (W.D.N.Y. Aug. 22, 2003); *Eddy v. Tops Friendly Mkts.*, 459 N.Y.S.2d 196, 197 (N.Y. App. Div., 4th Dep't 1983), *aff'd,* 59 N.Y.2d 692 (N.Y. 1983).

An injured plaintiff's assertion that a defendant property owner created the allegedly dangerous condition "must be more than mere speculation, and must be supported by evidence." *Clark*, 2014 WL 2778947, at *4. "For a plaintiff to prove *prima facie* negligence, even if she can credibly infer creation by defendant, she must show the creation was an affirmative, 'deliberate and intentional' act by defendant." *Olsen v. K Mart Corp.*, 04-CV-3648, 2005 WL 2989546, at *4 (E.D.N.Y. Nov. 8, 2005) (citing *Cook v. Rezende*, 347 N.Y.S.2d 57 [N.Y. 1973]).

Alternatively, a plaintiff may show that the defendant had actual notice of a dangerous condition if it "received reports of it such that it [wa]s actually aware of the existence of the particular condition that caused [the injury]." *Cousin v. White Castle Sys., Inc.*, 06-CV-6335, 2009 WL1955555, at *7 (E.D.N.Y. July 6, 2009) (citing *Torri v. Big v. of Kingston, Inc.*, 147 A.D.2d 743, 744-45 [N.Y. App. Div., 3d Dep't 1989]). For a plaintiff to show that a defendant had constructive notice of a dangerous condition, the alleged "defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986); *Clark*, 2014 WL 2778947, at *5; *accord, Olsen,* 2005 WL 2989546, at *4; *Grier v. R.H. Macy & Co.*, 569 N.Y.S.2d 447, 448 (N.Y. App. Div., 1st Dep't 1991).

Granted, a plaintiff may establish constructive notice through "evidence that the defendant was aware of an ongoing and recurring unsafe condition which regularly went unaddressed." *Clark*, 2014 WL 2778947, at *5 (citing *Mazerbo v. Murphy*, 860 N.Y.S.2d 289, 291 [N.Y. App. Div., 3d Dep't 2008]). However, a "general awareness that some dangerous condition may be present is insufficient to constitute constructive notice." *Clark*, 2014 WL 2778947, at *5 (citing *Tedesco v. Norfolk S. Corp.*, 00-CV-0172, 2002 WL 1628874, at *4 [W.D.N.Y. June 6, 2002]). Moreover, again, in the absence of any proof as to how long a defective condition existed prior to an accident, a plaintiff cannot rely on a theory of constructive notice. *See Torri v. Big V.*, 537 N.Y.S.2d 629, 631 (N.Y. App. Div., 3d Dep't 1989).

Finally, "where the actual or specific cause of an accident is unknown, under the doctrine of *res ipsa loquitur* a jury may in certain circumstances infer negligence merely from the happening of an event and the defendant's relation to it." *Kambat v. St. Francis Hosp.*, 89 N.Y.2d 489, 494 (N.Y. 1997). "*Res ipsa loquitur* simply recognizes what we know from our everyday experience: that some accidents by their very nature would ordinarily not happen without negligence." *Kambat*, 89 N.Y.2d at 494 (internal quotation marks omitted). Three conditions must be satisfied for a plaintiff to rely on the doctrine of *res ipsa loquitur*: "First, the event must be of a kind that ordinarily does not occur in the absence of someone's negligence; second, it must be caused by an agency or instrumentality within the exclusive control of the defendant; and third, it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Id*.

### III. ANALYSIS

After carefully considering the matter, the Court finds that Plaintiff's claim against Defendant should be dismissed for each of the reasons offered by Defendant in its memoranda of

law. *See, supra,* Part I.B. of this Decision and Order. (*See also* Dkt. No. 13, Attach. 3, at 9-15 [Def.'s Memo. of Law]; Dkt. No. 20, Attach. 1, at 3-8 [Def.'s Reply Memo. of Law].) The Court would add only the following three points.

First, the Court rejects Plaintiff's constructive-notice argument, because establishing that Defendant had constructive notice requires Plaintiff to make a showing of a hazardous condition that was not only visible and apparent before the Accident, but also in existence for a sufficient length of time to have allowed Defendant to observe and remove it. *See, supra,* Part II.B. of this Decision and Order. Here, Plaintiff has adduced no admissible record evidence establishing that the defective condition was "visible and apparent" before the Accident. (*See generally* Dkt. No. 18, Attach. 2-5 [Plf.'s Record Evidence].) In fact, L.V.'s father acknowledged that he saw nothing "out of the ordinary with the front of the counter" moments before the Accident. *See, supra,* Part I.C of this Decision and Order. *See also Walker v. United States*, 95-CV-6567, 1998 WL 299928, at *2 (S.D.N.Y. June 8, 1998) (finding a defect not "visible and apparent" where plaintiff conceded that she did not see the dangerous condition before the injury-causing accident). Furthermore, Plaintiff has adduced no admissible record evidence establishing that any such visible and apparent defective condition existed for a sufficient length of time to enable Defendant to observe and remove it before the Accident. (*See generally* Dkt. No. 18, Attach. 2-5 [Plf.'s Record Evidence].) Based on the current record, any argument to the contrary would be mere speculation. *See Mueller v. Hannaford Bros. Co.*, 713 N.Y.S.2d 789, 789-90 (N.Y. App. Div., 3d Dep't 2000) ("[M]ere conclusions based upon surmise, conjecture, speculation or assertions are without probative value.").

Unable to adduce to such admissible record evidence, Plaintiff argues that inadequate inspections of the premises could lead a rational fact finder to conclude that Defendant had

9

constructive notice of the defect. For the sake of brevity, the Court will not linger on the absence of admissible record evidence as to *how* the daily inspections were inadequate (and the circularity of any argument that they *must have been* inadequate because they failed to reveal the defect). Nor will the Court linger on whether the frequency of the inspections compensated for any briefness of the inspections. More important is the fact a substandard inspection cannot put a defendant on constructive notice of a defect, sufficient to render the defendant liable for negligence, where the defect did not exist for a sufficient length of time to enable the defendant to observe and remove the defect before the accident. *See, supra,* Part II.B. of this Decision and Order. As stated earlier, L.V.'s father did not see the defect just moments before the Accident. *See, supra,* Part I.C of this Decision and Order. Even if it were assumed that "a period of hours" elapsed between the time that the Counter and surrounding areas were visually inspected and the time that the Accident occurred, that fact would not establish constructive notice. *See Aggrey v. Stop & Shop Supermarket Co.*, 00-CV-7999, 2002 WL 432388, at *5 (S.D.N.Y. March 19, 2002) ("[T]he failure to sweep the area of the accident for a period of hours, even if established, would not be enough to permit a jury to infer that the defendant had constructive notice of the grape(s) that caused Ms. Aggrey's fall.").

Second, the Court rejects Plaintiff's argument that Defendant caused the Accident by applying Windex to the Counter on daily basis, thus weakening the adhesiveness of the laminate over time: while the record contains evidence establishing that Windex was applied to the Counter on a daily basis, the record does not contain evidence establishing that Windex weakened the laminate's adhesive. The only witness who spoke about the cleaning agent was Ms. Cuthrell: when asked if she knew whether cleaning agents could cause a defective condition like the one present in this case, she simply replied that she would "have no way of knowing."

10

(Dkt. No. 13, Attach. 9, at 57 [Cuthrell Depo.].) *See also Tashjian v. Strong & Assoc.*, 639 N.Y.S.2d 507, 510 (N.Y. App. Div., 3d Dep't 1996) (indicating an absence of probative testimony linking a defective condition with defendant's conduct was "fatal" to plaintiff's claim). Even if Plaintiff had adduced expert testimony regarding the cleaning agent's affect (which she did not), it is questionable whether such testimony would have been probative without an examination and/or testing of the cleaning agent and type of laminate on the Counter. *See Petro v. N.Y. Life Ins. Co.*, 715 N.Y.S.2d 725, 726 (N.Y. App. Div., 2d Dep't 2000) (deeming an expert's explanations as to defendant's negligence conclusory and thus non-probative, where the expert failed to examine the instrumentality in question). As a result, Plaintiff's argument as to the cleaning agent's affect on the portion of the laminate in question is mere speculation, and she has failed to raise a triable issue of fact with regard to the cleaning agent.

Third, the Court rejects Plaintiff's *res ipsa loquitir* argument, because Defendant has established that the Counter was not under its exclusive control. It is uncontroverted that (1) the Counter was the place for people to go to exchange their tickets for prizes, and (2) there were other people present in Tilt at the time of the Accident. *See, supra,* Part I.C. of this Decision and Order. Indeed, Plaintiff failed to rebut the testimony of Kevin Jordan, the senior vice president of Defendant's operations, indicating that he has witnessed children climb onto the lips of similar counters in Defendant's other locations. (Dkt. No. 13, Attach. 8, at 38 [Jordan Depo.].) New York courts have found evidence of public contact on a daily basis to be, in and of itself, sufficient to preclude the doctrine of *res ispa loquitir* in personal injury cases. *See Lenigan*, 2013 WL 149461, at *9, n.22 (listing cases). Alternatively, it is uncontroverted (based on the current record) that L.V. placed her flip-flop shoe on the piece of laminate in question shortly

before the Accident.  *See, supra,* Part I.C. of this Decision and Order.  *See also Petro*, 715 N.Y.S.2d at 726 (stating the doctrine of *res ipsa loquitir* does not apply when "there is evidence that the plaintiff's own actions contributed to the accident").

For each of these alternative reasons, Plaintiff's claim against Defendant is dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

The Clerk of the Court is directed to enter Judgment for Defendant against Plaintiff, and close this action.

Dated: September 15, 2015
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge